UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRISTOPHER CALHOUN, | ) | 3:23-CV-01453 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UCONN HEALTH, et al, | ) | |
| *Defendants*. | ) | February 2, 2024 |

## INITIAL REVIEW ORDER

*Pro se* Plaintiff Christopher Calhoun, a sentenced inmate currently incarcerated at Cheshire Correctional Institution ("Cheshire"), filed this action pursuant to 42 U.S.C. § 1983. Plaintiff names six defendants: UConn Health, PA-C Ersilda Ajce, Dr. Natalie J. Moore, RN Nicole Belanger, Dr. Douglas W. Gibson, and UConn Health Administrator John Doe. He argues that Defendants were deliberately indifferent to his serious medical needs in violation of his rights under the Eighth and Fourteenth Amendments. Plaintiff seeks damages and injunctive relief.

Under 28 U.S.C. § 1915A, the Court must review civil complaints filed by prisoners and dismiss any portion of a complaint that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b)(1)–(2). Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a

1

"probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted). The Court, however, is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

It is well-established that submissions of *pro se* litigants are "reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (summary order) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (per curiam)). *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (internal citations omitted)). This liberal approach, however, does not exempt *pro se* litigants from the minimum pleading requirements described above; a *pro se* complaint still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (summary order) (quoting *Iqbal*, 556 U.S. at 678). Therefore, even where a plaintiff is proceeding *pro se*, the Court may not

"invent factual allegations" that the plaintiff has not pleaded. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

The Court has thoroughly reviewed all factual allegations in the Complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A. Based on this initial review, the Court orders as follows.

## I. FACTUAL BACKGROUND

While the Court does not set forth all of the facts alleged in Plaintiff's Complaint, it summarizes his basic factual allegations here to give context to its ruling below.[1]

The incidents underlying this action occurred while Plaintiff was confined at MacDougall-Walker Correctional Institution. On November 16, 2021,[2] Plaintiff was attacked in the recreation yard by other prisoners. Compl., ECF No. 1 ¶ 1. He was struck in the back of his head while his hands were cuffed behind his back, causing him to fall forward and strike the concrete with his forehead. *Id*. Plaintiff lost consciousness and suffered a depression on the left side of his skull. *Id*. The inmates continued to kick him and hit his face with handcuffs they used "like brass knuckles." *Id*.

Plaintiff was evaluated by prison medical staff who determined that he should be taken to an outside hospital. *Id.* ¶ 2. Plaintiff was transported to UConn Health, which was not the closest hospital with an emergency room, by prison transport vehicle instead of by ambulance. *Id.* ¶ 3. Plaintiff alleges that UConn Health holds a lucrative contract with the Connecticut Department of

---

[1] Two months after filing his Complaint, Plaintiff filed two additional exhibits. ECF No. 11. The Court informed Plaintiff that if he would like the Court to consider the information contained therein, he must file an amended complaint by January 17, 2024. *See* ECF No. 12. Because Plaintiff did not file an amended complaint, the Court conducted an initial review of his original Complaint, without reference to the exhibits.

[2] In the Complaint, Plaintiff alleges the incident occurred on November 16, 2023. ECF No. 1 ¶ 1. As he filed the Complaint on November 2, 2023, this date is clearly erroneous. The medical records attached to the Complaint indicate that the plaintiff underwent an x-ray of his skull on November 29, 2021. ECF No. 1-1. Thus, the Court assumes that the incident occurred on or around November 16, 2021, not November 16, 2023.

Correction. *Id.* ¶¶ 18, 24.

In the emergency room, Plaintiff was seen by John/Jane Doe who asked him what had happened. *Id.* ¶¶ 4–5. Plaintiff complained of a migraine headache, nausea, dizziness, and "a huge black spot in his memory," after which he was seen by Dr. John/Jane Doe. *Id.* ¶¶ 6–7. Although Plaintiff's face was swollen, his eyes discolored, his face bruised, and his skull depressed, medical staff commented that his injuries were minor and Plaintiff received no treatment before being discharged; he was not given IV fluids, an MRI, or an x-ray, and was not held overnight to assess the extent of his injuries. *Id.* ¶¶ 8–11, 14–16; *see also* ECF No. 1-1 (containing photographs of Plaintiff's injuries). Dr. Doe ordered a CT scan of his facial bones and soft tissue, but not of the depressed skull at his forehead. *Id.* ¶ 19. Plaintiff returned to UConn Health the following day, but still received no treatment. *Id.* ¶ 17.

On November 29, 2021, in response to Plaintiff's complaints of migraines, dizziness, nausea, urinary problems, and a dent in his forehead, APRN Shaver ordered an x-ray of Plaintiff's skull. *Id.* ¶ 21. The x-ray revealed a depressed skull fracture. *Id.* ¶. Plaintiff alleges that Dr. Gibson nonetheless prepared a final report stating that "[n]o depressed skull fracture was identified," allegedly because the discovery of a skull fracture would subject UConn Health and the Department of Correction to "greater liability." *Id.* ¶ 22. Plaintiff attaches a report contradicting this allegation, however. The report is authored by Dr. Gibson and states "depressed skull fractures are identified." ECF No. 1-1 at 1.

**II.     DISCUSSION**

Plaintiff contends that UConn Health doctors and medical staff violated his Eighth and Fourteenth Amendment rights by not providing him adequate medical care. He also alleges that he "was subjected to racial discrimination and falsification of his medical records by a major

4

Connecticut hospital . . . ." *Id.* ¶ 24. Plaintiff seeks injunctive relief in the form of apology letters from each defendant, the return of his original medical records, adequate nutrition from the Department of Correction, and adequate medical treatment going forward. *Id.* ¶¶ 29–30, 33–35. He also seeks compensatory and punitive damages against each defendant in their individual and official capacities in the amount of $45,000,000, and $15,000,000, respectively. *Id.* ¶¶ 31–32.

      A. <u>UConn Health</u>

Plaintiff names UConn Health as a defendant. UConn Health is a hospital affiliated with the University of Connecticut. Section 1983 provides in relevant part that "[e]very person who . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured[.]" 42 U.S.C. § 1983. The state and its agencies, however, are not considered persons within the meaning of section 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that state and state agency are not persons within the meaning of section 1983); *Gaby v. Bd. of Trs. of Cmty. Tech. Coll.*, 348 F.3d 62, 63 (2d Cir. 2003) (per curiam) (collecting cases holding that state universities and their boards of trustees are not persons within the meaning of section 1983). This includes UConn Health as a state agency. *See Siminausky v. Starkowski*, No. 3:15-cv-159 (VLB), 2016 WL 236208, at *6 (D. Conn. Jan. 20, 2016) (dismissing claims against UConn Health because UConn Health is not a person within the meaning of section 1983); *Stewart v. John Dempsey Hosp.*, No. 3:03-cv-1703 (WWE), 2004 WL 78145, at *2 (D. Conn. Jan. 9, 2004) (holding that John Dempsey Hospital University of Connecticut Health Center is not a person within the meaning of section 1983).

As UConn Health is not a person within the meaning of section 1983, it cannot be sued in this action. All claims against UConn Health, both the claims for deliberate indifference to medical

5

needs and discrimination, are dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

### B. Deliberate Indifference to Medical Needs

Plaintiff contends that the remaining defendants were deliberately indifferent to his serious medical needs in violation of the Eighth and Fourteenth Amendments. Plaintiff alleges that he is a sentenced prisoner. The Department of Correction's inmate locator confirms that Plaintiff was sentenced on July 29, 2020, before the events at issue in November of 2021. Conn. Dep't of Corr., Inmate Information, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=390878 (last accessed January 30, 2024). Thus, his claims are cognizable under the Eighth, not the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (holding deliberate indifference claims of sentenced inmates are cognizable under the Eighth Amendment, while deliberate indifference claims of unsentenced inmates are cognizable under the Fourteenth Amendment). Any Fourteenth Amendment deliberate indifference claims are dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

To establish an Eighth Amendment claim, the plaintiff must present evidence "showing the offending official's 'deliberate indifference to [his] serious medical needs.'" *Thomas v. Wolf*, 832 F. App'x 90, 92 (2d Cir. 2020) (summary order) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). There are two elements to a claim for deliberate indifference to medical needs. The first element is objective. The inmate must "show that he was 'actually deprived of adequate medical care' by an official's failure 'to take reasonable measures in response to a [sufficiently serious] medical condition.'" *Id.* (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006)). Establishing an objectively serious deprivation requires the court to make two separate inquiries. First, the court must determine whether the inmate "was actually deprived of adequate medical care." *Salahuddin*, 467 F.3d at 279. The medical providers are only required to have

"act[ed] reasonably." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 845 (1994)). The second inquiry requires the court to determine "whether the inadequacy in medical care is sufficiently serious," which "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id*. at 280. Thus, although the objective element sometimes is referred to as the seriousness of the medical need, that is only one factor evaluated in determining the seriousness of the deprivation of medical care. *See id.*

A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent medical condition that can cause death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). A medical condition may not initially be serious, but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects the individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted).

The second element is subjective. The inmate must show "that the official acted with a culpable state of mind of 'subjective recklessness,' such that the official knew of and consciously disregarded 'an excessive risk to inmate health or safety.'" *Wolf,* 832 F. App'x at 92 (citations omitted). Negligence or medical malpractice does not rise to the level of an Eighth Amendment

7

violation. *Id.* (citing *Hathaway*, 99 F.3d at 553); *see also Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (stating "mere negligence' is insufficient to state a claim for deliberate indifference).

### 1. Defendants Ajce, Moore, and Belanger

Plaintiff identifies Defendants Ajce, Moore, and Belanger as members of the medical staff; because he lists them as having the same addresses as UConn Health, the Court presumes they are medical staff members of that hospital. *See* ECF No. 1 at 3–4. Within the body of his Complaint, however, he does not reference Defendants Ajce, Moore, or Belanger at all. He alleges only that he was interviewed by a John/Jane Doe upon his arrival to the emergency room; that he was then seen by a Dr. John/Jane Doe; that APRN Shaver ordered an x-ray; and that Dr. Gibson falsified a report to conceal his injuries. Otherwise, Plaintiff generally alleges that no defendant gave him an IV, MRI, or x-ray; that the defendants suggested that his injuries were minor; and that all defendants rushed him out of the emergency room without properly diagnosing or treating him.

To recover damages under section 1983, Plaintiff must show each defendant's "personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Although he makes general allegations against defendants collectively, Plaintiff alleges no facts indicating what Defendants Ajce, Moore, or Belanger specifically did or failed to do. Thus, he has not demonstrated the requisite involvement of any defendant. The claims against these defendants are dismissed.

### 2. Doe Defendants

The Court liberally construes Plaintiff's complaint as suing three different Doe Defendants: a Doe administrator, the Doe staff member that interviewed Plaintiff upon his arrival at the emergency room, and the Doe doctor who first treated Plaintiff. On the first page of Plaintiff's Complaint, Plaintiff names only "Defendant Doe." ECF No. 1 at 1. Later, however, he lists

8

"Defendant Doe" as a "UConn Health Administrator," which may refer to a supervisor or a medical staff member generally. *Id.* at 4. But because the allegations against the Doe staff member and Doe doctor are central to his complaint, and he initially names only "Defendant Doe," the Court finds it appropriate to construe Plaintiff's complaint as bringing claims against these three Doe Defendants.

Beginning with the Doe administrator, it appears that this defendant is only a supervisory official; there are no specific allegations against him or her. Personal involvement of a supervisory official is not established "by reason of [the defendant's] supervision of others who committed the violation," however. *Tangreti v. Bachmann*, 983 F.3d 609, 619 (2d Cir. 2020). Plaintiff must instead, "plead and prove the elements of the underlying constitutional violation directly against the official . . . ." *Id*. at 618. Because Plaintiff has failed to do so, he fails to state a cognizable claim against this defendant. The claim against the Doe administrator is dismissed.

Next, the only allegation against the Doe staff member is that he or she asked Plaintiff what happened when he arrived at the emergency room, and that Plaintiff responded listing his symptoms. Plaintiff was then seen by the Doe Doctor. There is no basis to conclude from this allegation that the Doe staff member acted with recklessness. This claim against the Doe staff member is dismissed.

Last, the Court finds that Plaintiff's allegations are sufficient to state a claim against the Doe Doctor. Plaintiff alleges that the doctor ordered a CT scan of his facial bones and soft tissue, presumably to address his facial injuries, but not an MRI or x-ray. Further, Plaintiff alleges that two weeks after the incident, APRN Shaver ordered an x-ray which revealed a fractured skull. These facts suggest that the Doe doctor failed to properly assess all of Plaintiff's injuries. Taking the allegations of the Complaint as true, because the severity of Plaintiff's head injuries was visibly

apparent, the facts tend to show that the doctor may have understood and consciously disregarded an excessive risk to Plaintiff's health.  The allegations could support a claim of deliberate indifference to serious medical needs under section 1983.  The claim against the Doe doctor therefore may proceed.

To summarize, as Plaintiff has not alleged facts showing the personal involvement of Defendants Ajce, Moore, Belanger, or the Doe administrator, nor that the Doe staff member acted with deliberate indifference, the claims against them are dismissed without prejudice.  Plaintiff's claim against the Doe doctor may proceed, however.  Plaintiff may amend his complaint regarding these five defendants if he can allege facts indicating how each defendant was involved in his claim and that each defendant appreciated and disregarded an excessive risk to his health.

### 3. Defendant Dr. Gibson

Plaintiff alleges that his x-ray report noted a depressed skull fracture, but Dr. Gibson prepared a "final report" stating that no depressed skull fracture was found.  The medical report Plaintiff attaches to his Complaint contradicts this allegation, however.  It appears to be authored by Dr. Gibson and states that "depressed skull fractures are identified."  ECF No. 1-1 at 1.  There is therefore no plausible claim that Dr. Gibson was aware of a potentially serious injury but ignored—or concealed—it.  This claim is dismissed.

## ORDERS

All Fourteenth Amendment claims, and all claims against UConn Health are dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).  All Eighth Amendment claims against Defendants Ajce, Moore, Belanger, the Doe administrator, Doe staff member, and Dr. Gibson are dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).  Plaintiff's Eighth Amendment claim against the Defendant Doe doctor may proceed.

Plaintiff has two options as to how to proceed in response to this Initial Review Order:

(1) **OPTION ONE:** If Plaintiff wishes to proceed immediately on the claim against Defendant Doe, and only as set forth above, he may do so without further delay. If Plaintiff selects this option, he shall file a notice on the docket by **March 4, 2024**, informing the court that he elects to proceed with the claim against Defendant Doe. The Clerk will not be able to serve the complaint on the Doe doctor, however, because Plaintiff has not provided the first or last name for this defendant. If Plaintiff elects to proceed under this option, Plaintiff will have ninety (90) days to identify Defendant Doe by his or her first and last name. Otherwise, this case may be dismissed. The Court will allow Plaintiff to serve a third-party discovery request to UConn Health to identify the Doe doctor. Plaintiff may also be able to identify the Doe doctor by seeking his medical records from the incident.

(2) **OPTION TWO:** Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his Complaint that have been dismissed without prejudice in order to attempt to state a viable claim, he may file an Amended Complaint by **March 4, 2024.** An Amended Complaint, if filed, will completely replace the Complaint and the Court will not consider any allegations made in the Complaint in evaluating any Amended Complaint. The Court will review any Amended Complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Plaintiff elects to file an Amended Complaint, the Complaint this Initial Review Order addressed will not proceed to service of process.

If the Court receives no response from Plaintiff by **March 4, 2024**, from the date of this order, the Court will presume that Plaintiff wishes to proceed on the Complaint as to the claim permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if

he seeks to amend the complaint in any manner in the future.

**Change of Address**.  If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that he **MUST** notify the court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Plaintiff should also notify Defendants or counsel for Defendants of his new address.

SO ORDERED at Hartford, Connecticut, this 2nd day of February, 2024.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE