UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRISTOPHER CALHOUN, ) | 3:23-cv-01453 (SVN) |
| *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | |
| UCONN HEALTH, et al., ) | |
| *Defendants*. ) | May 17, 2024 |

### INITIAL REVIEW ORDER OF AMENDED COMPLAINT

*Pro se* plaintiff Christopher Calhoun, a sentenced inmate currently incarcerated at Cheshire Correctional Institution ("Cheshire"), filed this action pursuant to 42 U.S.C. § 1983. In accordance with the Initial Review Order, ECF No. 13, Plaintiff has filed an amended complaint to attempt to correct deficiencies in the claims included in his original complaint. ECF No. 14.

Plaintiff names eight defendants in their individual and official capacities: Dr. Natalie J. Moore, RN Nicole Belanger, PA-C Ersilda Ajce, Dr. Douglas W. Gibson, Dr. Heather L. Sibley, PA Carly B. Roy, RN John McMahon, and Dr. Sanjay Mittal. He argues that Defendants were deliberately indifferent to his serious medical needs in violation of his rights under the Eighth Amendment. Plaintiff seeks damages and injunctive relief.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted

1

an initial review pursuant to 28 U.S.C. § 1915A.[1]  Based on this initial review, the Court orders as follows.

I.  **FACTUAL BACKGROUND**

While the Court does not set forth all of the facts alleged in Plaintiff's amended complaint (ECF No. 14), it summarizes his basic factual allegations here to give context to its ruling below.

The incidents underlying this action occurred while Plaintiff was confined at MacDougall-Walker Correctional Institution.  On November 16, 2021, Plaintiff was attacked in the recreation yard by other prisoners.  Am. Compl. ¶ 1.  He was struck in the back of his head while his hands were cuffed behind his back, causing him to fall forward and strike the concrete with his forehead. *Id*.  Plaintiff lost consciousness and suffered a depression on the left side of his skull.  *Id*.  The inmates continued to kick him and hit him with handcuffs they used "like brass knuckles." *Id*.

Plaintiff was evaluated by prison medical staff who determined that he should be taken to an outside hospital.  *Id.* ¶ 2.  Plaintiff was transported to UConn Health, which was not the closest hospital with an emergency room, by prison transport vehicle instead of by ambulance.  *Id.* ¶ 3.  He arrived at the hospital emergency room approximately ninety-four minutes after the assault. *Id.*

Nurse Belanger performed a "perfunctory triage" of Plaintiff's injuries and asked him what happened.  *Id.* ¶¶ 4–5.  Plaintiff said that he had been assaulted and could not remember anything

---

[1] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (*per curiam*) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).  Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the facial plausibility standard.  *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint that includes only "labels and conclusions," "a formulaic recitation of the elements of a cause of action" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

else that happened.  *Id.* ¶ 6.  Plaintiff complained of a migraine headache, nausea, dizziness, and "a huge black spot in his memory."  *Id.*  Defendant Belanger listened and walked away.  *Id.*  Contrary to his statements, Plaintiff's medical records indicate that his only complaint was a headache, he was not sure whether he lost consciousness, and he denied dizziness or lightheadedness; Plaintiff asserts Defendants fabricated these records to minimize his injuries.  *Id.* ¶¶ 7, 17.  Plaintiff was seen by Dr. Moore and provided her same description of the incident and his symptoms.  *Id.* ¶ 8.

No defendant provided Plaintiff IV fluids.  *Id.* ¶ 9.  He was diagnosed with a "large left-side hematoma."  *Id.*  Plaintiff underwent a CT scan of his head.  *Id.* ¶ 10.  Although Defendants Moore, Ajce, and Belanger all made notes in his medical file after the CT scan, no one noted the large skull depression under the hematoma.  *Id.*  Defendants minimized Plaintiff's injuries and discharged him.  *Id.* ¶ 14.

The skull depression was not diagnosed until November 29, 2021, after his release and return to prison when an APRN at the Department of Correction scheduled Plaintiff for an x-ray.  *Id.* ¶¶ 10–11.  According to medical records Plaintiff has attached to his amended complaint, the initial impression from the x-ray was a depressed skull fracture, with the technician noting "depression to L forehead area. s/p assault, likely d/t surrounding soft tissue swelling."  Nov. 29, 2021, UConn Health Visit Record, ECF No. 14 at 14.  In his final report, dated December 9, 2021, Dr. Gibson's impression was: "Limited evaluation. No depressed skull fracture identified. Additional imaging may be warranted."  *Id.* at 15.  Plaintiff alleges that this note was made to protect other Defendants from liability.  Am. Compl. ¶ 15.

Plaintiff alleges that he returned to the hospital emergency room on November 17, 2021, but acknowledges that hospital records show the date as November 22, 2021.  *Id.* ¶ 17.  On this

3

visit he was treated by Defendants Roy, McMahon, and Sibley. *Id.* Nurse McMahon noted that Plaintiff complained of dizziness, intermittent migraines, and nausea which was controlled with medication. *Id.* PA Roy provided IV fluids only after Plaintiff requested them, even though she was aware that he had not urinated or had a bowel movement since the accident. *Id.* ¶ 18.

Plaintiff complained of hearing "zipper-like" sounds in his head and requested an MRI. *Id.* ¶ 20. An MRI was scheduled for December 15, 2021. *Id.* On December 15, 2021, Plaintiff returned to the hospital and was seen by Dr. Mittal, a neurologist. *Id.* ¶ 21. Dr. Mittal read Plaintiff's medical file, felt his skull, ignored the depression, and stated that Plaintiff's trauma was the result of symptoms of a post-traumatic brain injury which could last between six to eight weeks and three months. *Id.* Dr. Mittal stated that Plaintiff did not need an MRI but nonetheless agreed to reschedule the MRI for a month later. *Id.*

Plaintiff continues to experience migraines, urinary issues, dizziness, and problems with vision and balance. *Id.* ¶ 24. He submits an exhibit showing that the MRI was scheduled for January 21, 2022, but does not provide the results of the test. Dec. 15, 2021, UConn Health Visit Record, ECF No. 14 at 25.

## II. DISCUSSION

Plaintiff contends that Defendants violated his Eighth Amendment rights by not providing him adequate medical care. Specifically, he alleges that "defendants knew that the Plaintiff had a 'large hematoma,' head injury depressed skull that could at a later time cause hemorrhaging." Am. Compl. at 4.

### A. Official Capacity Claims

Plaintiff's amended complaint indicates that he asserts his claims against Defendants in their official and individual capacities. To the extent he asserts official capacity claims for

4

monetary damages against Defendants (all alleged to be state employees), such claims are dismissed as barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Thus, the Court considers only whether Plaintiff has sufficiently alleged claims for damages against any defendant in his or her individual capacity.

Plaintiff may proceed with injunctive relief against a defendant in his or her official capacity only to the extent he alleges an ongoing constitutional violation and seeks prospective injunctive relief. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)); *Silva v. Farrish*, 47 F.4th 78, 84 (2d Cir. 2022) ("To determine whether *Ex parte Young* applies to a complaint, we conduct a 'straightforward inquiry' into whether the complaint (1) 'alleges an ongoing violation of federal law' and (2) 'seeks relief properly characterized as prospective.'") (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846–47 (1994)).

Plaintiff seeks injunctive relief in the form of orders that he be provided medical and mental health treatment by doctors of his choice at a hospital of his choice, that UConn provide him nutritious meals until he is released from prison, that all prison records for visits to UConn Health be completed and provided to the prisoner before discharge, and that all prisoners taken to UConn Health be monitored closely by supervisors and be transported by ambulance. As to the request that UConn provide Plaintiff with nutritious meals for the duration of his prison term, there are no allegations in the amended complaint concerning the nutrition in the meals provided, so that request for injunctive relief is dismissed as unsupported by the factual allegations in the complaint.

With respect to the injunctive relief Plaintiff seeks related to medical care, at most, Plaintiff alleges that he continues to experience symptoms from the assault and subsequent inadequate medical treatment. Although Plaintiff may still feel the effects of the alleged constitutional violations, and although he seeks prospective relief in the form of future treatment by doctors of his choice and changes to records and transportation policies, there are no allegations that a constitutional violation itself is ongoing. A plaintiff "invoking those effects does not transform past state action into an ongoing violation" under *Ex parte Young*. *Idlibi v. Conn. Dep't of Public Health*, No. 3:23-cv-353 (JAM), 2024 WL 920728, at *4 (D. Conn. Mar. 4, 2024) (quoting *Jemsek v. Rhyne*, 662 F. App'x 206, 211 (4th Cir. 2016)), *appeal filed* March 22, 2024. Because Plaintiff does not allege any action or inaction by Defendants since December of 2021, such that the Court could liberally construe his complaint as bringing a claim for an ongoing constitutional violation, Plaintiff cannot pursue the requested injunctive relief.

### B. Deliberate Indifference to Medical Needs

Plaintiff's claims for injunctive relief from Defendants in their individual capacities are dismissed, as Defendants lack the authority to provide such relief in their individual capacities. *See Kuck v. Danaher*, 822 F. Supp. 2d 109, 143 (D. Conn. 2011).

As noted above, the Court examines whether Plaintiff's claims for damages against Defendants in their individual capacities may proceed. To establish an Eighth Amendment claim, the plaintiff must present evidence "showing the offending official's 'deliberate indifference to [his] serious medical needs.'" *Thomas v. Wolf*, 832 F. App'x 90, 92 (2d Cir. 2020) (summary order) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). There are two elements to a claim for deliberate indifference to medical needs. The first element is objective. The inmate must "show that he was 'actually deprived of adequate medical care' by an official's failure 'to take

6

reasonable measures in response to a [sufficiently serious] medical condition.'" *Id.* (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006)). Establishing an objectively serious deprivation requires the court to make two separate inquiries. First, the court must determine whether the inmate "was actually deprived of adequate medical care." *Salahuddin*, 467 F.3d at 279. The medical providers are only required to have "act[ed] reasonably." *Id.* (quoting *Farmer*, 511 U.S. at 845). The second inquiry requires the court to determine "whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id*. at 280. Thus, although the objective element sometimes is referred to as the seriousness of the medical need, that is only one factor evaluated in determining the seriousness of the deprivation of medical care. *See id.*

A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent medical condition that can cause death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). A medical condition may not initially be serious, but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects the individual's daily activities; or the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702–03.

The second element is subjective.  The inmate must show "that the official acted with a culpable state of mind of 'subjective recklessness,' such that the official knew of and consciously disregarded 'an excessive risk to inmate health or safety.'"  *Wolf,* 832 F. App'x at 92 (citations omitted).  Negligence or medical malpractice does not rise to the level of an Eighth Amendment violation.  *Id.* (citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) ("'mere negligence' is insufficient to state a claim for deliberate indifference).

In addition to an Eighth Amendment claim for deliberate indifference to medical needs, plaintiffs may also bring claims under 42 U.S.C. § 1983 against any defendant who conspires to violate civil rights.  To state a § 1983 conspiracy claim, a plaintiff must plead:  "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

### 1.  *Defendants Moore, Ajce, Belanger, Sibley, Roy, and McMahon*

Plaintiff identifies Defendants Moore, Ajce, Belanger, Sibley, Roy, and McMahon as the persons who treated him on his two visits to the emergency room.  Plaintiff's claim appears to be that these Defendants treated him in a perfunctory manner and did not perform sufficient tests to ascertain whether he has suffered a skull fracture.

Defendants Moore, Ajce, and Belanger treated him on the first visit.  Plaintiff alleges that Nurse Belanger failed to record his complaint of dizziness and falsely stated he could not recall whether he lost consciousness.  Dr. Moore ordered a CT scan but not an x-ray or MRI.  No one gave him IV fluids or noted the skull depression under the hematoma.  On the second visit, Defendants Sibley, Roy, and McMahon treated Plaintiff.  Defendant Roy provided IV fluids only

8

after Plaintiff requested them.  None of these Defendants scheduled an MRI.

On initial review of the Complaint, the Court determined that Plaintiff had stated a plausible claim against Dr. Doe, the doctor who ordered the CT scan but not an x-ray or MRI, on the theory that the doctor failed to properly assess all of Plaintiff's injuries.  The Court relied on the fact that the x-ray ordered by the Department of Correction nurse suggested a fractured skull and Plaintiff's allegation that the severity of his head injuries was visibly apparent.  *See* Initial Review Order, ECF No. 13, at 9–10.  As Plaintiff has now identified this person as Dr. Moore, the Amended Complaint will proceed against her on a direct Eighth Amendment theory and, as described below, on a theory that she conspired with Defendants Belanger and Ajce to deprive Plaintiff of his constitutional rights.

Plaintiff alleges that Nurse Belanger failed to accurately record his complaints and alleges no specific actions by PA Ajce, apart from his general statement that no one provided IV fluids. The medical records Plaintiff attached to his amended complaint, however, appear to show that PA Ajce recorded the allegedly minimized complaints, which were later attested to by Dr. Moore. ECF No. 14 at 17.  Plaintiff's allegations can be liberally construed as suggesting that Defendants Belanger and Ajce, at the very least, acted in a conspiracy with Dr. Moore to minimize the extent of Plaintiff's injuries in his medical records, to protect their colleagues from liability.  At this stage, the Court cannot conclude that Plaintiff's claims against Defendants Belanger and Ajce should be dismissed.  Plaintiff may therefore proceed against Defendants Belanger and Ajce for further development of the record on a theory of conspiracy to violate his constitutional rights.

Regarding Plaintiff's second visit, Plaintiff alleges that he again was treated in a perfunctory manner by Defendants Roy, McMahon, and Sibley.  He alleges that Defendant Roy only provided IV fluids after Plaintiff requested them, and that none of these Defendants ordered

an MRI, despite that this was Plaintiff's second visit to the emergency room for his injuries. The medical records state that at least one of these providers ordered a CT scan, which was unremarkable. ECF No. 14 at 20. As the Court is allowing the claim against Dr. Moore to proceed for failing to order an MRI, it will likewise allow the direct Eighth Amendment claim against Defendants McMahon and Sibley to proceed for the same reasons.

As for the claim that Defendant Roy failed to provide Plaintiff with IV fluids, Plaintiff has alleged that Defendant Roy knew he had not urinated or had a bowel movement, and that dehydration and loss of blood could have caused this issue. While this could be mere negligence, the Court will allow the direct Eighth Amendment claim against Defendant Roy to proceed for further development of the record, to determine if the facts suggest deliberate indifference to Plaintiff's medical needs, as opposed to negligence.

As Plaintiff has not stated any facts concerning the membership of Defendants Roy, McMahon, or Sibley in the alleged conspiracy, no conspiracy claim will proceed against them.

2. *Defendant Gibson*

Plaintiff alleges that Dr. Gibson altered his conclusion about whether the November 29, 2021, x-ray showed a skull fracture to avoid liability for other Defendants. In support of his original complaint, Plaintiff provided the first page of Dr. Gibson's report which indicated a skull fracture. Because the report submitted contradicted his allegations, the Court dismissed the claim against Dr. Gibson. ECF No. 13 at 10. Plaintiff now submits the full report. The initial report noted a skull fracture, but Dr. Gibson appears to have changed his impression to "[n]o skull fracture identified" with a suggestion that additional imaging might be warranted. ECF No. 14 at 14–15. On the copy of the report he submitted, Plaintiff questions why no additional testing was done, though he has submitted evidence that he was scheduled for an MRI in January 2022.

Plaintiff's theory is that Defendants conspired to cover up the seriousness of his assault. As his allegation that Dr. Gibson changed his conclusion about whether he had a skull fracture is now supported by the medical records, Plaintiff is entitled to the inference at the initial review stage that Dr. Gibson did so in order to minimize the extend of Plaintiff's injuries. Discovery may disprove this claim, but it is not so frivolous as to be dismissed on initial review. The claim that Dr. Gibson conspired with others to deprive Plaintiff of adequate medical care shall proceed.

   3. *Defendant Mittal*

Finally, Plaintiff alleges that, when he saw Dr. Mittal in the UConn Health Department of Neurology on December 15, 2021, reviewed his medical file, touched his skull but ignored the "depression" that Plaintiff showed him, and stated that the MRI was not necessary because the injuries resulted from a traumatic brain injury. After Plaintiff "repeatedly disagreed" with Dr. Mittal's conclusion that no MRI was necessary, Dr. Mittal scheduled one for January of 2022. As Dr. Mittal ultimately scheduled the requested MRI, Plaintiff's allegations show only an initial disagreement over treatment, which is not cognizable under section 1983. The claim against Dr. Mittal is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**ORDERS**

All official capacity claims for damages and requests for injunctive relief are dismissed pursuant to 28 U.S.C. § 1915A(b)(1). Plaintiff's claims against Defendant Mittal are also dismissed. The case will proceed only against Defendants Moore, Belanger, Ajce, McMahon, Sidley, Roy, and Gibson for damages in their individual capacities as set forth above. Specifically, Plaintiff may proceed against Defendants Moore on both a direct Eighth Amendment claim and a claim of conspiracy to violate constitutional rights; against Defendants Belanger and Ajce on a

conspiracy claim only; against Defendants McMahon, Sidley, and Roy for a direct Eighth Amendment claim only; and against Defendant Gibson for a conspiracy claim only.

The Court enters the following orders.

(1) The Clerk shall mail a waiver of service of process request packet containing the Amended Complaint and this Order to Defendants Moore, Belanger, Ajce, McMahon, Sidley, Roy, and Gibson at the UConn Health Center, 263 Farmington Avenue, Farmington, CT 06030, by **May 31, 2024**, and report to the court on the status of the waiver requests on the thirty-fifth day after mailing.  If any Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshal Service on such Defendant in his or her individual capacity and such Defendant shall be required to pay the costs of such service, in accordance with Federal Rule of Civil Procedure 4(d).

(2) The Clerk shall send Plaintiff a copy of this Order.

(3) Defendants must file a *pro se* appearance or notice of appearance by counsel within sixty (60) days from the date the waiver form is sent.  The Court will enter a scheduling order after Defendants or counsel appear.

(4) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should include all the case numbers in the notice of change of address.  Plaintiff should also notify Defendant

or the attorney for Defendant of his new address.

(5) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendant's counsel by regular mail. In addition, Plaintiff must serve copies of all documents by regular mail on any defendant who does not participate in electronic filing.

SO ORDERED at Hartford, Connecticut, this 17th day of May 2024.

    /s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE